1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8   CATHERINE G.,

9                            Plaintiff,          CASE NO. 3:20-cv-05741-BAT

10       v.                                      **ORDER REVERSING THE
                                                 COMMISSIONER'S FINAL DECISION
11  COMMISSIONER OF SOCIAL SECURITY,             AND REMANDING**

12                           Defendant.

13          Plaintiff applied for disability and supplemental security income benefits alleging

14  disability beginning August 2007. Tr. 16. In April 2019, the ALJ issued a decision finding

15  Plaintiff disabled only for the closed period between October 1, 2015 and December 31, 2017.

16  The ALJ found obesity, lumbar degenerative disc disease, and status post microdiscectomy and

17  laminectomy are severe impairments; Plaintiff has the residual functional capacity (RFC) to

18  perform sedentary work with additional limitations prior to the closed period and has the RFC to

19  perform less than sedentary work with additional limitations following the closed period; and

20  Plaintiff cannot perform past relevant work but is not disabled because she can perform other

21  jobs in the national economy. Tr. 20-37.

22          Plaintiff appeals the ALJ's decision that she is not disabled before or after the closed

23  period. Plaintiff contends the ALJ misevaluated the medical evidence, incorrectly found

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION
AND REMANDING - 1

1    Plaintiff's activities contradict her disability claim, failed to give valid reasons to discount lay

2    witness testimony, and made erroneous step five findings. Dkt. 21. For the reason below, the

3    Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further

4    administrative proceedings under sentence four of 42 U.S.C. § 405(g).

5                                            **DISCUSSION**

6           The Court may reverse the Commissioner's decision denying Social Security benefits if

7    the ALJ's decision is based on legal error or not supported by substantial evidence in the record

8    as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). The Court addresses in turn

9    Plaintiff's arguments the ALJ erred in finding Plaintiff not disabled before October 1, 2015, or

10   after December 31, 2017.

11   **A.    Period Before October 1, 2015**

12          *1.    Workers' Compensation Claim Evidence*

13          Plaintiff argues the ALJ erred by failing to discuss forms submitted by Kevin P.

14   Schoenfelder, M.D. in connection with Plaintiff's state workers' compensation claim. Dkt. 21 at

15   6 – 8. The implication is Dr. Schoenfelder's forms set forth functional limitations the ALJ

16   overlooked in determining Plaintiff's ability to perform work activity. However, the record

17   clearly shows the ALJ discussed Plaintiff's treatment history with Dr. Schoenfelder at length, *see*

18   Tr. 24 – 25, and in fact gave "significant weight" to Dr. Schoenfelder's October 2008 opinion

19   that Plaintiff "could return to work and perform the work activities of a Surgery Assistant with

20   the temporary limitation of lifting up to 25 pounds." *Id.* at 28. Further, Plaintiff's own briefing

21   acknowledges that even after 2008, these forms indicate Plaintiff "may perform modified work."

22   *See* Dkt. 21 at 7.

23

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION
AND REMANDING - 2

Plaintiff's argument the ALJ harmfully erred is thus unsupported: the ALJ gave great weight to Dr. Schoenfelder's opinion Plaintiff could return to modified work following her surgery. Plaintiff does not challenge the ALJ's treatment of Dr. Schoenfelder's opinion. Plaintiff thus fails to meet her burden of establishing the ALJ harmfully erred. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (holding that the party challenging an administrative decision bears the burden of proving harmful error).

### 2.    *Brad Bates, Ph.D.*

Plaintiff argues the ALJ erred by "overlook[ing]" Dr. Bates' May 2009 mental assessment. Dkt. 21 at 9. In support, Plaintiff summarizes much of Dr. Bates' findings. However, the ALJ discussed Dr. Bates' examination and found "that there were questions about the accuracy and objectivity of the claimant's self-reporting and possible symptom magnification." Tr. 21. Plaintiff does not identify any functional limitations assessed by Dr. Bates the ALJ failed to address. As discussed above, Plaintiff bears the burden to show the ALJ harmfully erred and conclusory statements regarding Plaintiff's view of the record are insufficient to meet this burden.

## B.    Period After December 31, 2017

Plaintiff argues the ALJ misevaluated the medical evidence, her activities, and lay witness testimony and made erroneous step five findings in finding her not disabled beginning January 1, 2018.

### 1.    *Medical Evidence*

1       Plaintiff lists, seriatim, medical evidence relating to the post-closed period window. She

2 states the evidence undermines the ALJ's finding Plaintiff's disability ended on December 31,

3 2017. Dkt. 21 at 10 – 11. The ALJ found "[t]he medical record demonstrates improvement in

4 functioning after [Plaintiff's] October 2017 surgery." Tr. 33. The ALJ found Plaintiff "reported

5 improvement with physical therapy" – from December 2017 to June 2018 – "including being

6 able to stand longer, improvements in her posture and feeling in her foot. The claimant made

7 steady progress towards goals including decreased frequency of impaired sensation and motor

8 control to left foot, improved tolerance to standing and walking, decreased pain in lumbar spine

9 and leg, and increased strength in the lower left extremity." *Id*.

10      The record indicates after her October 2017 surgery, Plaintiff's "lower extremity

11 symptoms resolved except for continued pain and weakness in her left foot" and "pain within her

12 low back has increased." Tr. 1193 (December 15, 2017 physical therapy initial evaluation).

13 Following her seventh physical therapy session, Plaintiff had "noticed less symptoms within her

14 foot (numbness, heaviness, impaired neuromotor control)" and "reports less overall back pain

15 since starting therapy." Tr. 1179 (January 18, 2018 progress note). Plaintiff's physical therapist

16 assessed Plaintiff "has made steady progress towards meeting rehabilitation goals. She is able to

17 demonstrate improved left lower extremity strength, though it is still limited compared to her

18 contralateral lower extremity. Tolerance to static positions as well as ambulation has also

19 improved, though standing continues to be significantly limited." Tr. 1881 (January 18, 2018

20 progress note). By March 2018, Plaintiff "[v]isits YMCA a few times a week where she does

21 upper body exercises and plays racquetball with her son," although "[s]he consciously avoids

22 twisting when swinging the racket and is very careful when picking up the ball up off the floor."

23 Tr. 1166 (March 6, 2018 progress note). Following her last session, Plaintiff's physical therapist

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION
AND REMANDING - 4

1   assessed Plaintiff had no limitations sitting in a comfortable chair, "but limited to 15 min[utes] in

2   a hard chair"; standing "20 min[utes] with weight shifting, rest after that"; "walk[ing] 30-45

3   min[utes] around the grocery store as long as she holds onto cart"; and squatting. Tr. 1138 (June

4   28, 2018 progress note).

5          Substantial evidence thus supports the ALJ's finding that Plaintiff is able to "perform less

6   than the full range of sedentary work" – a more limited RFC compared to closed period.

7   *Compare* Tr. 32 *with* Tr. 29. Plaintiff views the evidence differently. However, even assuming

8   the evidence is susceptible to more than one rational interpretation, the Court is required to

9   uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.

10  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Because the Court cannot say the

11  ALJ's determination is unreasonable and not supported by substantial evidence, the Court will

12  not disturb the ALJ's finding.

13          ***2.      Plaintiff's Activities***

14          Plaintiff argues the ALJ erred by finding her level of functioning supports her ability to

15  perform less than sedentary work. Dkt. 21 at 12. The ALJ found Plaintiff "reported she was

16  attending the YMCA a few times a week including using circuit machines for upper body

17  exercise and playing racquetball." Tr. 34. The ALJ also found Plaintiff, among other things, "can

18  perform her own personal care, prepares meals, cleans the bathroom sink, does laundry, drives,

19  goes shopping and is able to handle her finances," and "watches TV, plays video games, cross-

20  stiches, crochets, draws and paints." *Id*.

21          While the minimal daily activities such as making meals, watching TV, or performing

22  personal care are not activities that are a valid basis to discount Plaintiff's allegations or support

23  the ALJ's RFC determination of less than sedentary work, Plaintiff's physical fitness activities at

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION
AND REMANDING - 5

1    the YMCA are valid grounds. As noted above, the record indicates Plaintiff exercised and played

2    racquetball "a few times a week." Tr. 1153. Plaintiff does not address or otherwise challenge the

3    ALJ's finding that Plaintiff engaged in these activities, which reasonably support the ALJ's RFC

4    determination and non-disability finding. Accordingly, as the ALJ gave at least one valid reason

5    supported by substantial evidence, the ALJ's reference to Plaintiff's minimal activities is

6    harmless. The Court accordingly concludes the ALJ properly considered Plaintiff's exercise and

7    racquetball activities as inconsistent with Plaintiff's claims of disability.

8                    ***3.        Lay Witness Testimony***

9            Plaintiff argues the ALJ erroneously discounted the lay witness testimony of Plaintiff's

10   son, mother, and significant other. Dkt. 21 at 13 – 14. The ALJ discounted the lay witness

11   testimony as "largely mirror[ing] the claimant's own allegations." Tr. 34. The ALJ discounted

12   Plaintiff's testimony, which the Plaintiff does not challenge. Accordingly, as the ALJ's

13   unchallenged reasons for discounting the Plaintiff's testimony reasonably apply to the lay

14   witness testimony, the Court will not disturb the ALJ's finding. *See Molina*, 674 F.3d at 1122.

15                   ***4.        Step Five Findings***

16           Plaintiff argues the ALJ's step five findings are unsupported. In specific, Plaintiff

17   contends the job of addresser no longer exists in significant numbers. Dkt. 21 at 15. The

18   Commissioner disagrees and argues the aggregate number of jobs – between touchup screener,

19   addresser, and nut sorter – the ALJ found is sufficiently "significant" under *Gutierrez v. Comm'r*

20   *of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). Dkt. 22 at 9. The Court finds persuasive a line of

21   cases supporting the proposition that the job of addresser no longer exists in significant numbers.

22   *See Skinner v. Berryhill*, No. CV 17-3795-PLA, 2018 WL 1631275, at *6 (C.D. Cal. Apr. 2,

23   2018) ("[I]t is not unreasonable to assume that the occupation of 'addresser,' which—as

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION
AND REMANDING - 6

described by the DOT—provides for addressing envelopes *by hand or by typewriter*, is an occupation that has significantly dwindled in number since 1991 in light of technological advances. That being the case, a reasonable mind would not accept the VE's testimony that there are over 3,000 such positions in the region of California alone, or even that there are over 10,000 in the national economy."); *Brandie K. A. v. Saul*, No. EDCV 19-01017-RAO, 2020 WL 2572461, at *4 (C.D. Cal. May 21, 2020) ("In addition to the *Skinner* court, other district courts in the Ninth Circuit have found the 'obsolete' argument persuasive and found that the ALJ erred in relying on the VE's job numbers for the addresser position.") (collecting cases); *see also Eric S. v. Saul*, No. C18-5974-JCC-MAT, 2019 WL 4279680, at *3 (W.D. Wash. Aug. 7, 2019), *report and recommendation adopted sub nom. Stokke v. Comm'r of Soc. Sec.*, No. C18-5974-JCC, 2019 WL 4276644 (W.D. Wash. Sept. 10, 2019) ("That the job at issue is 'addresser' further mitigates against a finding that it exists in significant numbers, however, given that this job is defined to involve obsolete tasks."). The Court thus finds substantial evidence does not support the ALJ's determination the addresser position exists in significant numbers.

The ALJ found approximately 13,000 touchup screener jobs, 8,001 addresser jobs, and 4,700 nut sorter jobs exist in the national economy, for a total of 25,701 jobs. Tr. 36. Without the number of addresser jobs, the total is reduced to 17,700 jobs. This sum falls below *Gutierrez*'s "close call" of 25,000 jobs. 740 F.3d at 529. Accordingly, the ALJ erred at step five in finding there are jobs that exist in significant numbers Plaintiff can perform, and the matter must be remanded for further administrative proceedings.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

The Court affirms the ALJ's findings with the exception of the findings made at step five. Thus, on remand, the ALJ shall proceed to step five and redetermine whether there are jobs in the national economy that exist in significant numbers that Plaintiff can perform.

DATED this 20th day of April 2021.

_____

BRIAN A. TSUCHIDA
United States Magistrate Judge